## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JENNIFER KNOWLES, )<br>3302 N Dixieland Road )<br>Apt A9 )<br>Rogers AR 72756 )<br><br>*Plaintiff,* )<br><br>v. )<br>)<br>Robin Carnahan, Administrator, )<br>U.S. General Services Administration )<br>1800 F St., NW )<br>Washington, DC 20405 )<br><br>*Defendant*, )<br>) | Civil Action No.:<br>**Jury Trial Demanded** |

## <u>VERIFIED COMPLAINT</u>

Plaintiff, Jennifer Knowles, ("Plaintiff", "Knowles"), by and through her counsel, Morris

E. Fischer, Esq., hereby submits this federal complaint in violation of the Rehabilitation Act, 29

U.S.C. § 701 and 791–794 et seq.

## <u>PARTIES</u>

1. Plaintiff, Jennifer Knowles, was an employee of the United States General Services

   Administration (GSA).

2. The GSA is an agency of the United States government with an office in Washington, DC.

   Defendant is Administrator, General Services, named in her official capacity pursuant to

   the Rehabilitation Act, 29 U.S.C. § 701 and 791–794 et seq.

3. Defendant maintains an office in Washington, DC.

1

## JURISDICTION

**4.**     This action arises under the Rehabilitation Act, *et seq.* which prohibit discrimination against disabled employees.

**5.**     Defendant operates in this judicial district, and a substantial part of the events giving rise to this action took place within this judicial jurisdiction.

**6.**     Therefore, this court has jurisdiction over these claims under the aforesaid U.S.Cs.

**7.**     On June 23, 2023, Plaintiff made contact with the Agency's EEO Counselor. (Exhibit 1, Report of Investigation ("ROI") page 25.

**8.**     On July 5, 2023, plaintiff was first interviewed by the EEO counselor, with a final interview on September 20, 2023. Id.

**9.**     On October 3, 2023, plaintiff filed a formal complaint alleging discrimination based on physical and mental handicap. Id. *page 12*

**10.**     All of the necessary administrative prerequisites were met prior to filing the instant action and more than 180 days have passed from the date of this complaint.

**11.**     Therefore, all administrative exhaustion requirements have been met.

**12.**     This court has proper jurisdiction and venue pursuant to 29 U.S.C. § 1391 (2012).

## FACTS

**13.**     Plaintiff is a female, who suffers from a number of disorders, including, but not limited to apraxia of speech, a brain injury, cerebral palsy, auditory processing disorder, dyslexia, and a seizure disorder. Id. at *206.*

**14.**     Knowles was diagnosed with apraxia of speech in 1999, a brain injury and cerebral palsy in 2000, auditory processing disorder and dyslexia in 2004, and a seizure disorder in 2007. Id.

**15.**     The Plaintiff, Jennifer Knowles, was recruited by the GSA in 2022 as a "Schedule A" employee through the Workforce Recruitment Program, a recruitment mechanism for those with disabilities. Id. at 29.

**16.**     The essence of the Schedule A hiring authority and the Workforce Recruitment Program (WRP) is to facilitate not just the technical hiring of a disabled employee, but also the integration of those employees with disabilities into the federal workforce.

**17.**     When an employee is hired through the Workforce Recruitment Program ("WRP") and becomes a "Schedule A" employee, it is with the understanding that the employer, has a duty to recognize the employee's disabilities and provide the necessary reasonable accommodations to enable them to perform their job duties effectively.

**18.**     Plaintiff was formally hired as an employee by GSA in September 2022, as a GS-09 Program Analyst.

**19.**     Plaintiff joined the GSA as part of the Class 9 Enterprise Emerging Leaders Program (EELP). Id. at *313*.

**20.**      Plaintiff's duties included actively participating and successfully completing rotational assignments.

**21.**     This EELP program was essentially a rotational program for new college graduates that rotated through different groups within the GSA every 3-4 months.

**22.**      Knowles's first rotation went well, she was complimented on her work product and her managers were impressed with her work enough to recommend her to people who needed help with data analysis and recommended for further training. Id. at 2*13 and 313-314*.

**23.**     The plaintiff, notwithstanding her disabilities, was able to perform the essential functions

of her position with accommodation and had an excellent record of such during her first rotation.

*Id. at 213.*

**24.**     The plaintiff was an individual with a qualified disability.

**25.**      Plaintiff officially worked for GSA from September 11, 2022, to June 9, 2023

**26.**     According to Knowles's SF-50, she was hired by the GSA under the legal authority of

Schedule A. Id. at *71.*

**27.**     According to the EEO, "The Schedule A Hiring Authority for people with disabilities

(Schedule A) is an exception to the traditional hiring process. Schedule A streamlines the hiring

process for persons with disabilities …. "( https://www.eeoc.gov/publications/abcs-schedule-

tips-applicants-disabilities-getting-federal-jobs)

**28.**     5 CFR 213.3102(u) Schedule A states:

(u) *Appointment of persons with intellectual disabilities, severe physical disabilities, or psychiatric disabilities* —

(1) *Purpose.* An agency may appoint, on a permanent, time-limited, or temporary basis, a person with an intellectual disability, a severe physical disability, or a psychiatric disability according to the provisions described below.

(2) *Definition.* "Intellectual disabilities" means only those disabilities that would have been encompassed by the term "mental retardation" in previous iterations of this regulation and the associated Executive order, Executive Order 12125, dated March 15, 1979.

(3) *Proof of disability.*

(i) An agency must require proof of an applicant's intellectual disability, severe physical disability, or psychiatric disability prior to making an appointment under this section.

(ii) An agency may accept, **as proof of disability, appropriate documentation (e.g., records, statements, or other appropriate information) issued by a licensed medical professional (**e.g., a physician or other medical professional duly certified by a State, the District of Columbia, or a U.S. territory, to practice medicine); a licensed vocational rehabilitation specialist (State or private); or any Federal agency, State agency, or an agency of the District of Columbia or a U.S. territory that issues or provides disability benefits.

**29.**      The USAJobs.gov website states: "To be eligible for Schedule A, **you must provide a proof of a disability letter** stating that you have an intellectual disability, severe physical disability or psychiatric disability." *https://help.usajobs.gov/working-in-government/unique-hiring-paths/individuals-with-disabilities*

**30.**       Plaintiff's supervisor of record according to her SF-50 was Jacqueline Borman, (*Id.)*

**31.**      Knowles emailed supervisor Jacquelyn Borman her Schedule A proof of disability letter from her physician on July 27, 2022. Id. at *317.*

**32.**      The letter dated May 31, 2022, and signed by Dr. Pearl Samuel, states in part "To Whom It May Concern: This letter serves as certification that Jennifer Knowles is an individual with an intellectual disability, severe physical disability or psychiatric disability, and can be considered for employment under the Schedule A hiring authority 5 CFR 213.3102". Id. at *221.*

**33.**      Jacquelyn Borman denied knowing about Knowles's medical conditions in her EEO Affidavit. Id. at 641-642.

**34.**      No request for additional medical documents regarding work-related restrictions was made. Id. at *207.*

**35.**      Knowles's first rotation was with the Technology Business Management (TBM) Program Management Office (PMO) in the Office of Government-wide Policy (OGP) from October 26, 2022 - January 6, 2023. Id. at *313.*

**36.**      Her second rotation was with the Office of the Chief Financial Officer, Analytics & Decision Support Division (BIA) from January 23 - April 28, 2023. *Id.*

**37.**      By this point in time Bethany Toppert was Knowles's supervisor, Isabel Metzger was her rotation leader on second rotation assignments providing day-to-day guidance and assigning her work, and Ashleigh Sanders was her second rotation supervisor. Id. at *205*.

**38.**      In September 2022, Knowles had discussed her disability during the Enterprise Emerging Leadership Program (EELP) orientation meetings chaired by Jacquelyn Borman and Bethany Toppert. Id. at 206.

**39.**      Around October/November 2022, Knowles had discussed her disability again during EELP group monthly meetings chaired by Jacquelyn Borman and Bethany Toppert. Id.

**40.**      In early February 2023, Knowles informed Isabel Metzger and Ashleigh Sanders about increasing the dosage of her medications and the uncertain effects on how it would affect the Plaintiff. Id. at *206*.

**41.**      In February/March 2023, Knowles experienced arm pain due to cerebral palsy and requested to provide verbal status information in a Zoom meeting, rather than writing it in email, as this would reduce the amount of typing she would need to do. Id. at *208*.

**42.**       This request was denied by Isabel Metzger citing, "Ashleigh doesn't want that." Id.

**43.**      On February 23, 2023, Knowles discussed performance issues with Ashleigh Sanders and Isabel Metzger, including lateness to a meeting and calendar management. Id. at 209, 214.

**44.**      On February 24, 2023, Knowles discussed her remaining brain injury and seizure disorder with Isabel Metzger via video chat while wearing EEG equipment for a multi-day test to detect seizure activity. Id.

**45.**     Knowles notified her supervisor, Isabel Metzger, on February 24, 2023, that she had a brain injury and seizure disorder. Id.

**46.**     Isabel Metzger admits in her ROI affidavit that she was aware of Knowles's medical condition starting in January 2023. Id. at *763-764*.

**47.**     Ashleigh Sanders admits in her ROI affidavit that she was aware of Knowles's medical condition starting in February 2023. Id. at *804*

**48.**     Early in her second rotation of January to April 2023, Knowles discussed her disabilities with her day-to-day supervisor, Isabel Metzger, and requested various accommodations. Id. at *206-207*.

**49.**     In that meeting Knowles provided Metzger with web links to the website ***AskJan - Job Accommodation Network***, that discussed auditory processing disorder and speech-language impairment, along with common accommodations for them. Id. at *206-207 and 323-324*.

**50.**     The U.S. Office of Personnel Management (OPM), which serves as the chief human resources agency and personnel policy manager for the Federal Government, lists that ***AskJan*** website under "Additional Resources Relating to Reasonable Accommodations, Assistive Technology and Accessibility" on its own website: *https://www.opm.gov/policy-data-oversight/disability-employment/reasonable-accommodations/*

**51.**     HRM 2300.1 CHGE 2 Appendix D-Reasonable Accommodation Resources states "Job Accommodation Network (JAN). The JAN is a service funded by the U.S. Department of Labor Office of Disability Employment Policy (ODEP) providing expert, and confidential guidance on workplace accommodations and disability employment issues affecting employment of people with disabilities. JAN can provide free information about many types of reasonable accommodations. Call 1-800-526-7234 (Voice/TT) or visit the web site at www.askjan.org." Id. at 867.

52.     Isabel Metzger, second rotation leader, stated in her affidavit that she was familiar with the policy concerning reasonable accommodations for individuals with disabilities, and that she did indeed meet with Knowles. Id. at 770-771, question #28.

53.     During that meeting in January 2023, Metzger stated that a discussion took place between her and Knowles regarding Knowles' disorders, what support Knowles needed during her rotation, and a direct quote from the Metzger affidavit is as follows: "[I] asked her what would help her with her disorder, and we reviewed the *AskJan* website to discuss how I can best support her during her rotation." Id.

54.     They reviewed the *AskJan* website together, focusing on auditory processing disorder. Id.

55.     The links that Knowles provided to the website *AskJan*.org, outlined accommodations for auditory processing disorder, such as flexible schedules and scribe/notetaker support. https://askjan.org/publications/individuals/employee-guide.cfm

56.     Accommodation examples for auditory processing disorder from the *AskJan* website include the option for flexible schedules to optimize work performance and mental/brain rest, as well as the role of a scribe/notetaker in aiding employees with disabilities in notetaking. https://askjan.org/disabilities/Auditory-Processing-Disorder.cfm, and https://askjan.org/solutions/Scribe-Notetaker.cfm

57.     Metzger stated that Knowles also expressed the need for acronyms to be spelled out to aid her. Exhibit 1 page 770-771, question #28.

58.     It is undisputed that despite Knowles's discussions on her disabilities and accommodations, the GSA not only did not accommodate her, but then assigned her tasks

contrary to the accommodations requested and discussed, such as taking notes, which were later used as justification for her termination.

59.        In March 2023, Knowles was in a 1:1 meeting with Isabel Metzger and Knowles had recently changed her seizure medication level and felt what could be the initial indications of an impending seizure. Id. at *208*.

60.        Knowles indicated the situation to Isabel Metzger and requested a rescheduling of the meeting. *Id.*

61.         Knowles request was denied despite previously discussing her seizure disorder with Isabel Metzger and despite her previously informing her about the medication change. Id.

62.        On May 16, 2023, during a review meeting with Bethany Toppert and Jacquelyn Borman, Knowles discussed her disability needs and how they relate to hour-long lunch breaks. Id.

63.        During that review meeting Knowles' request of occasionally using her hour-long lunch break for disability needs was denied. Instead, she was told to take sick leave time. Id at *210*.

64.        After this denial, Knowles concluded that her supervisory chain was not handling her requests appropriately. Consequently, she began seeking alternative methods for obtaining appropriate accommodations. Id. at *211*.

65.        Knowles emailed the Reasonable Accommodation Coordinator (RAC) Octavia Johnson after her May 16 meeting a reasonable accommodation request, and received accommodation request forms from her. Id. at 211,  423 and 835-836.

66.        Knowles sent that email request on May 16, 2023, directly to RAC Octavia Johnson and added a request to have an extended lunch break. Id. at *835-836*.

**67.**     RAC Johnson stated in her affidavit that the accommodation request was never granted and never even processed. *Id. at 829- 831.*

**68.**     On June 8, 2023, Knowles attended a group meeting with the RAC office, where the accommodation process was discussed, to understand the process better and learn how to fill out and submit the paperwork. Id. at *211.*

**69.**     On June 9, 2023, the Agency terminated Jennifer Knowles. Id. at *35-38.*

**70.**     Bethany Toppert, Jacquelyn Borman, Isabel Metzger and Ashleigh Sanders, were all involved in the process of terminating the known to be disabled Knowles during her probationary period. Id. at *213.*

**71.**     There are significant discrepancies regarding the signed position description for Jennifer Knowles and the Position Description provided by Supervisor Bethany Toppert in her Equal Employment Opportunity (EEO) Affidavit. Id. (compare 328 to *437-48).*

**72.**     Bethany Toppert's affidavit erroneously includes an unsigned Position Description for position 00EM461, a position not held by Ms. Knowles. Id. at 437-438.

**73.**     Instead, Ms. Knowles was employed in position 00CM461, which carries a distinct set of responsibilities.

**74.**     The unsigned 00EM461 Position Description outlines duties such as evaluating the effectiveness of government programs, applying analytical techniques to organizational practices, and conducting evaluative studies—tasks that are not encompassed at all within the signed 00CM461 Position Description actually belonging to Jennifer Knowles. Id.

**75.**     Termination reasons provided included poor note taking and lack of note taking. Id. at *36.*

**76.**　　　Despite providing information about her disability and how it impacts note taking, the impact of her note taking was a stated reason for her termination. Id.

**77.**　　　Despite informing her supervisor about her disabilities and asking for various accommodations, Jennifer Knowles had been tasked with taking meeting notes, which were cited as poor quality in the termination packet. Id. at *216*.

**78.**　　　Termination reasons provided also included Knowles taking a nap, even though this occurred during Knowles's lunch hour, necessitated by her brain injury. Id. at *36*.

**79.**　　　Knowles occasionally had used her full lunch hour to rest her brain due to her disabilities, which she informed her supervisor about. *Id. at 216.*

**COUNT I**
**FAILURE TO ACCOMMODATE**
**VIOLATION OF THE REHABILITATION ACT**

**80.**　　　Plaintiff re-alleges and reincorporates all prior allegations as if fully stated herein.

**81.**　　　Plaintiff had a disability, recognized by her employer.

**82.**　　　Plaintiff has a disability involving apraxia of speech, a brain injury, cerebral palsy, auditory processing disorder, dyslexia, and a seizure disorder.

**83.**　　　These medical conditions seriously impact the Plaintiff's ability to perform several major life activities such as communicating and reading.

**84.**　　　Plaintiff had a qualified disability in that she could perform all of the essential functions of her position.

**85.**　　　The Plaintiff received an eight hour "Time Off Award" in May of 2023, for the work she completed in her first rotation.

**86.**      "A time–off award is time off from duty, without loss of pay or charge to leave, granted to a federal employee as a form of incentive or <u>recognition.</u>"

*https://www.opm.gov/policy-data-oversight/performance-management/performance-management-cycle/rewarding/time-off-awards/*

**87.**      Plaintiff engaged in good-faith discussions during the interactive process with management regarding this accommodation, but management denied Plaintiff's reasonable accommodation requests.

**88.**      Management failed to engage in the good-faith interactive process with Plaintiff regarding these reasonable accommodation requests.

**89.**      The GSA's failure to accommodate Jennifer Knowles' documented disabilities and its subsequent decision to terminate her employment directly contradict the purpose and spirit of these programs, which are designed to promote diversity, inclusion, and equal employment opportunities for people with disabilities in the federal government.

**90.**      The termination of a Schedule A employee hired through the WRP, without first engaging in the interactive process to identify and implement reasonable accommodations, represents a clear violation of the purpose and spirit of the WRP, and undermines the federal government's commitment to supporting and empowering individuals with disabilities in the workplace.

**91.**      Said reasonable accommodation was not an undue burden on the Defendant.

**92.** Plaintiff could have performed all of her job duties with said accommodation.

**93**. As a result of Defendant failing to provide said accommodation, Plaintiff could not perform her job duties.

**94.** Failing to accommodate Plaintiff is discrimination in violation of the

Rehabilitation Act of 1973, as amended.

**95.** The Agency acted wantonly, willfully, with malice, and with reckless indifference to Plaintiff's civil rights.

**96.** Because of this unlawful conduct, Plaintiff suffered anguish, anxiety, fear, helplessness, hopelessness, shock, humiliation, insult, embarrassment, loss of self-esteem, self-worth, and professional reputation, and other personal damages, and Plaintiff suffered tangible losses.

<u>**COUNT II**</u>
<u>**DISABILITY DISCRIMINATION IN VIOLATION OF THE**</u>
<u>**REHABILITATION ACT**</u>

**97.** Plaintiff re-alleges and reincorporates all prior allegations as if fully stated herein.

**98.** Plaintiff suffered the aforementioned tangible, adverse, employment actions.

**99.** Plaintiff suffered those actions because of her disability.

**100.** The Agency took this aforementioned tangible, adverse, employment actions against Plaintiff because of her disability and her persistent opposition to Agency civil rights practices.

**101.** Employees similarly situated to Plaintiff, who did not have Plaintiff's disability, did not have these tangible, adverse employment actions happen to them.

**102.** The Agency acted wantonly, willfully, with malice, and with reckless indifference to Plaintiff's civil rights.

**103.** Because of this unlawful conduct, Plaintiff suffered anguish, anxiety, fear, helplessness, hopelessness, shock, humiliation, insult, embarrassment, loss of self-esteem and self-worth, professional reputation, and other personal damages and tangible losses.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief:

a. A declaratory judgment that the conduct of the Agency challenged herein was illegal and in

violation of the aforementioned laws;

b. Economic and Compensatory damages in an amount to be proved at trial,

including back-pay, front-pay, compensation for past and future pecuniary and non-pecuniary

losses resulting from the unlawful employment practices described herein;

c. All reasonable attorneys' fees, expenses, and costs incurred by Plaintiff;

d. Reinstatement; and

e. Such other and further relief, as the Court may deem just.

## VERIFICATION OF AMENDED COMPLAINT

I, Jennifer Knowles, have read this Amended Complaint. I declare under the penalty of perjury

under the laws of the United States that the foregoing is true and correct to the best of my

knowledge.

*Jennifer Knowles*
_____
Jennifer Knowles

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury on all matters properly tried to a jury.

Respectfully Submitted,

*Morris E. Fischer*
/s/
_____
Morris E. Fischer, Esq.
DC Bar No: 490369
Morris E. Fischer, LLC
11150 Georgia Avenue
Suite 235
Silver Spring, MD 20902
301-328-7631 Office
301-328-7638 Fax
morris@morrisfischerlaw.com
Counsel for Plaintiff